IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15CV289

| | |
|---|---|
| DANIEL FUSCO and DIANE FUSCO, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| NORTHPOINT ERM, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court upon Defendant Northpoint ERM, LLC's Motion to Dismiss (Doc. No. 22). Plaintiffs filed a response in opposition to this motion (Doc. No. 26) and Defendant filed a Reply (Doc. No. 35). Plaintiffs have moved to strike Defendant's Reply brief (Doc. No. 37).

The Court will first address Plaintiffs' Motion to Strike Defendant's Reply brief pursuant to Fed. R. Civ. P. 12(f) and Local Civil Rule 7.1(E). Local Rule 7.1(E) provides that "a reply brief should be limited to a discussion of matters newly raised in the response." Reply briefs "may not inject new grounds" and any argument that "was not contained in the main brief" or raised in opposition "is not before the Court." *Tyndall v. Maynor*, 288 F.R.D. 103, 108 (M.D.N.C. 2013). The Court finds that Defendant's Reply brief improperly raises new arguments and shall be stricken.[1]

---

[1] Defendant has agreed that the portion of its Reply brief raising an argument under the North Carolina Dead Man's Statute, N.C. Gen. Stat. § 8C-1, Rule 601(c), should not be considered by the Court.

1

**FACTUAL BACKGROUND**

Plaintiffs allege that they were induced to begin working for Defendant NorthPoint ERM, LLC ("Northpoint") through the fraudulent misrepresentations of Defendant David Chapman, the then CEO of NorthPoint (Compl. ¶¶20-43.) In the course of discussing the concept of Plaintiffs becoming employees of NorthPoint, David Chapman allegedly made fraudulent misrepresentations about the company's business viability, revenue prospects, assets, and financial condition. *See* Compl. ¶¶ 2-5, 20-69. Specifically, Plaintiffs were allegedly told on several occasions by Mr. Chapman that various deals relating to Northpoint's risk assessment software products were either imminent or in the works, and that such deals would bring millions of dollars of revenue from which to compensate Plaintiffs for their work. *See* Compl. ¶¶ 23-29, 36-38, 40-54, 64-65, 67. Plaintiffs contend that the above representations made to Plaintiffs about the company were all knowingly false and made with the express purpose of defrauding Plaintiffs.

As a result of Mr. Chapman's knowingly false representations, Plaintiffs went to work for NorthPoint pursuant to employment contracts that they executed with the company. (Compl. ¶44.) Plaintiffs' employment agreements contain various provisions relating to their compensation. (Compl. at ¶46.) Specifically, Plaintiffs' employment agreements provide that they are entitled to be compensated with base salaries, commissions, bonuses, and an initial grant of 50,000 stock options each. *Id*. The agreements also provide for Plaintiffs to be reimbursed for the expenses they incur in the furtherance of the company's business. *Id*.

The employment agreements provide that Plaintiffs' base "salary at this time," i.e., the time of the execution of the agreements, was $0. (Compl. ¶47.) Mr. Chapman attributed the company's inability to pay an immediate base salary to the delay between the date these deals

were signed and the date that NorthPoint would begin receiving revenue under the deals. *Id*. Mr. Chapman stated that revenue would begin coming in from the company's deals and that employees would begin receiving salaries, within a few months of Plaintiffs' execution of their employment agreements. *Id*.

Plaintiffs' employment agreements contain provisions tracking Mr. Chapman's misrepresentations. For example, while Plaintiffs' initial salary is listed as "$0," their employment agreements provide that they will receive annual base salaries "of $125,000--$135,000 yearly with an objective of NorthPoint company bonuses to bring the target to a total of $150,000 -- $160,000 for the first full year." (Compl. ¶48.) In addition, Mr. Chapman represented that the company's signed deals and "live accounts" were expected to produce millions of dollars in compensation for Plaintiffs in the first year of their employment with the company. (Compl. ¶¶28, 37, 38, 54.) However, despite working for NorthPoint full-time, and in some weeks well in excess of over 40 hours per week, Plaintiffs have never been compensated. (Compl. ¶54.)

Plaintiffs allege that as a result of the Defendants' violations of the Fair Labor Standards Act ("FLSA") and fraudulent and unlawful conduct, Plaintiffs have suffered substantial damages. In addition to not being paid for almost a year, Plaintiffs' future job prospects have been badly damaged and they have suffered considerable emotional distress.

On July 3, 2015, Plaintiffs filed the Complaint that commenced this action. Plaintiffs bring causes of action against Northpoint for violations of the FLSA, the North Carolina and Florida Wage and Hour Act, as well as breach of contract, fraudulent inducement, fraud, violation of the North Carolina and Florida Unfair and Deceptive Trade Practices Act, veil

piercing, and civil conspiracy. Defendant has moved to dismiss these claims for failure to state a claim on which relief can be granted, and for failure to plead fraud with particularity.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Moreover, while factual allegations set forth in the complaint are considered to be true, the same does not apply to legal conclusions set forth in the complaint. *Id*. at 678. Rather, plaintiffs must nudge their claims "across the line from conceivable to plausible [or] their complaint must be dismissed." *Id*. at 680. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

**DISCUSSION**

Defendant argues that Plaintiffs' claims for violation of the FLSA and the North Carolina and Florida Wage and Hour Acts should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs were employed in an executive and professional capacity and are therefore exempt from the minimum wage requirements and maximum hour requirements of these statutes.[2] As this Court has previously recognized, "a job title alone is insufficient to establish the exempt status of an employee." *In re: Family Dollar FLSA Litigation* (*Samuel v. Family Dollar Stores*), 3:08-MD-1932, 2014 WL 1091356, *2 (W.D.N.C. March 18, 2014), quoting 29 C.F.R. §541.2 (2004) and *Babin v. Stantec Consulting Servs., Inc.*, No. 09-1160, 2010 U.S. Dist. LEXIS 88009

---

[2] The FLSA states that the minimum wage requirements and maximum hour requirements shall not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

4

at *11 (E.D. Pa., Aug. 25, 2010). "Under the FLSA, the court must examine the duties the employee actually performs in determining whether an employee is exempt. This analysis is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing [managerial] duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" *Id.* (additional citations omitted). This type of fact-intensive analysis is not appropriate at this stage of the litigation.

Defendant seeks to likewise dismiss Plaintiffs' breach of contract claim pursuant to Rule 12(b)(6). The elements of a claim for breach of contract under North Carolina law are: (i) the existence of a valid contract; and (ii) breach of the terms of the contract. *Dolan v. Dickson Props., Inc*., 224 N.C. App. 225 (2012). North Carolina appellate courts have repeatedly held that "where the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under [Rule 12(b)(6)]." *Id*. citing *McLamb v. T.P. Inc*., 173 N.C. App. 586, 588 (2005).

The Complaint alleges that Plaintiffs and NorthPoint entered into an agreement whereby NorthPoint agreed to provide Plaintiffs with a salary, commissions, bonuses, and stock options, and also agreed to reimburse Plaintiffs for their business expenses. (Compl. ¶46.) The Complaint alleges that NorthPoint breached its contracts with Plaintiffs by failing to provide them with the agreed-upon compensation, grant them stock options, or reimburse them for their expenses. (Compl. ¶54-58.) This is sufficient to state a plausible breach of contract claim.

Defendant argues that Plaintiffs' fraud and fraudulent inducement claims should be dismissed because Plaintiffs have failed to plead these actions with sufficient particularity under Fed. R. Civ. P 9(b). In order to state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (i) was reasonably

calculated to deceive; (ii) was made with the intent to deceive; (iii) did in fact deceive the plaintiff; and (iv) resulted in damages to the party. *Ynovus Bank v. Karp*, 887 F.Supp.2d 677, 686 (W.D.N.C. 2012) citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 189 (4th Cir. 2007). When an action sounds in fraud, the allegations must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 629 (4th Cir. 2008). A review of the Plaintiffs' Complaint reveals that Plaintiffs have alleged the general time, place and content of each alleged fraudulent statement, as well as the person who allegedly made the statement. These allegations are sufficiently detailed to provide Defendant with notice of the claims. The Court finds that Plaintiffs' allegations are sufficient to comport with the requirements of Rule 9(b).

Defendant seeks to dismiss Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") claim by arguing that the UDTPA does not apply where an employer-employee relationship exists. While it is correct that the UDTPA generally does not apply to employer-employee disputes, the gravamen of Plaintiffs' Complaint involves alleged fraudulent statements made prior to employment and designed to induce Plaintiffs to enter into an employment relationship. When this conduct allegedly occurred, there was no "employer-employee" relationship. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643 (1988) (UDTPA action can be maintained by employer against former employee for post- employment conduct).

Under North Carolina law, a corporate veil may be pierced where the corporation is a mere "instrumentality" of a defendant and has been used by a defendant to commit a wrong or breach a duty. *See e.g.*, *Glenn v. Wagner*, 313 N.C. 450, 454 (1985). Under Delaware law, Plaintiffs can make a prima facie showing that a corporate veil should be pierced by pleading "sufficient facts to show that some fraud or injustice was committed through the misuse of the

corporate form." *Tasz Inc. v. Industrial Thermo Polymers, Ltd.*, 80 F.Supp.3d 671, 686 (W.D.N.C. Jan. 20, 2015) citing *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251 (Del. Ch. Mar. 4, 2004). The Complaint is replete with allegations that NorthPoint's corporate veil should be pierced. *See*, *e.g.*, Compl. ¶¶5, 30, 41, 69, 70, 71, 72, 74, 75, 76. Accordingly, Plaintiffs have stated a plausible claim for veil piercing.

Likewise, the Complaint plausibly states a claim for civil conspiracy. The Complaint alleges that the Defendants created and maintained fraudulent documents, cooperated in making false and fraudulent misrepresentations, and conspired together to operate the sham entity, NorthPoint, in a manner calculated to defraud Plaintiffs. The detailed allegations contained in the Complaint, taken together, are more than sufficient to adequately plead a cause of action for civil conspiracy. *See*, *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F.Supp.2d 706 (M.D.N.C. 2013) (where the complaint "alleges that Defendants had an agreement to commit the acts underlying [plaintiffs'] claims" the complaint adequately states a claim for civil conspiracy).

IT IS THEREFORE ORDERED that Defendant Northpoint's Motion to Dismiss is hereby DENIED and Plaintiffs' Motion to Strike the Reply brief is hereby GRANTED.

Signed: January 13, 2016

Graham C. Mullen
United States District Judge