IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15CV289

| | | |
|---|---|---|
| DANIEL FUSCO and DIANE FUSCO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| NORTHPOINT ERM, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon Defendants Rebecca Chapman (in her individual capacity and as Executor of the Estate of David. L. Chapman), Sally Dugan, and Richard Gaffey's Motions to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Doc. Nos. 29, 27, 15, 6). The Court has reviewed the briefs and the submissions of the parties.

Plaintiffs allege that they were induced to begin working for Defendant NorthPoint ERM, LLC ("Northpoint") through the fraudulent misrepresentations of Defendant David Chapman, the then CEO of NorthPoint (Compl. ¶¶20-43.) In the course of discussing the concept of Plaintiffs becoming employees of NorthPoint, David Chapman allegedly made fraudulent misrepresentations about the company's business viability, revenue prospects, assets, and financial condition. (Compl. ¶¶ 2-5, 20-69.) Specifically, Plaintiffs were allegedly told on several occasions by Mr. Chapman that various deals relating to Northpoint's risk assessment software products were either imminent or in the works, and that such deals would bring millions of dollars of revenue from which to compensate Plaintiffs for their work. (Compl. ¶¶ 23-29, 36-38, 40-54, 64-65, 67.) Plaintiffs contend that the above representations made to Plaintiffs about

1

the company were all knowingly false and made with the express purpose of defrauding Plaintiffs.

As a result of Mr. Chapman's knowingly false representations, Plaintiffs went to work for NorthPoint pursuant to employment contracts that they executed with the company. (Compl. ¶44.) The employment agreements provide that Plaintiffs' base "salary at this time," i.e., the time of the execution of the agreements, was $0. (Compl. ¶47.) Mr. Chapman attributed the company's inability to pay an immediate base salary to the delay between the date these deals were signed and the date that NorthPoint would begin receiving revenue under the deals. *Id*. Mr. Chapman stated that revenue would begin coming in from the company's deals and that employees would begin receiving salaries, within a few months of Plaintiffs' execution of their employment agreements. *Id*.

Plaintiffs' employment agreements contain provisions tracking Mr. Chapman's misrepresentations. For example, while Plaintiffs' initial salary is listed as "$0," their employment agreements provide that they will receive annual base salaries "of $125,000--$135,000 yearly with an objective of NorthPoint company bonuses to bring the target to a total of $150,000 -- $160,000 for the first full year." (Compl. ¶48.) In addition, Mr. Chapman represented that the company's signed deals and "live accounts" were expected to produce millions of dollars in compensation for Plaintiffs in the first year of their employment with the company. (Compl. ¶¶28, 37, 38, 54.) However, despite working for NorthPoint full-time, and in some weeks well in excess of over 40 hours per week, Plaintiffs have never been compensated. (Compl. ¶54.) Moreover, Plaintiffs allege that Northpoint has no governing documents or stock plans, keeps no accurate books and records, and has no properly functioning board of directors. (Compl. ¶ 30.)

David Chapman died on May 1, 2015 and Defendant Rebecca Chapman, his daughter, became the new CEO of Northpoint. (Compl. ¶¶ 12-13.) Plaintiffs allege that Ms. Chapman represented that she had been elected to the position of CEO by Defendants Dugan and Gaffey. (Compl. ¶ 13.) Plaintiffs allege that Ms. Chapman, Dugan, and Gaffey are all owners, officers, directors, members and/or shareholders of Northpoint, as such, have control over the company. (Compl. ¶¶ 13-15.) In addition, these Defendants have all acted in concert, aided and abetted, and sought to conceal the fraud perpetrated by the other Defendants. (Compl. ¶ 73.) Plaintiffs assert that Defendant Northpoint is a sham company that does not observe corporate formalities and thus its corporate veil should be pierced and the individual Defendants should be considered alter egos of Northpoint. (Compl. ¶¶ 75-76.)

On July 3, 2015, Plaintiffs filed the Complaint that commenced this action. Plaintiffs bring causes of action against Defendants for violations of the Fair Labor Standards Act, the North Carolina and Florida Wage and Hour Act, as well as breach of contract, fraudulent inducement, fraud, aiding and abetting fraud, violation of the North Carolina and Florida Unfair and Deceptive Trade Practices Act, veil piercing, and civil conspiracy.

Defendants Rebecca Chapman (in her individual capacity and as Executor of the Estate of David. L. Chapman), Sally Dugan, and Richard Gaffey have all moved to dismiss on the basis of lack of personal jurisdiction, citing their limited contacts with the state of North Carolina. No one disputes that Defendant Northpoint is subject to personal jurisdiction in this Court, as it maintains a business office in North Carolina and employs a full-time employee in North Carolina.

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the

> individual . . . is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court.

*Newport News Holdings Corp. v. Virtual City Vision, Inc*., 650 F.3d 423, 433-34 (4th Cir. 2011) citing *Patin v. Thoroughbred Power Boats, Inc*., 294 F.3d 640, 653 n. 18 (5th Cir. 2002) (collecting cases) and *Estate of Thomson v. Toyota Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).

Plaintiffs have made a *prima facie* showing of corporate veil piercing. Many factual issues remain at this juncture, including but not limited to whether Northpoint is properly incorporated, whether corporate formalities are observed, and what amount of operational control, if any, did the individual Defendants have over the operations of the company. The Court is simply unable to make a determination of personal jurisdiction without the benefit of a full factual record and will defer such decision until after discovery is conducted in this case.

Defendant Rebecca Chapman, in her capacity as Executor of the Estate of David Chapman, has also moved to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. She argues that this Court lacks subject matter jurisdiction over the Plaintiffs' claims for damages against the Estate because the Estate has been filed in New Hampshire where the new Hampshire Superior Courts have exclusive jurisdiction. A New Hampshire statute provides that the Superior Courts of New Hampshire have exclusive jurisdiction over ancillary matters relating to claims brought against an estate by third parties for non-liquidated damages where a jury trial may be demanded. *See* N.H. Rev. Stat. 547:3-1 (2015). However, that statute does not, and cannot, deprive a federal court of jurisdiction over a case brought pursuant to a federal statute (in this case, the FLSA) or where diversity jurisdiction clearly exists. Plaintiffs have invoked this Court's jurisdiction to establish their claims against the Estate as well the other

Defendants. They are not seeking to have this Court probate Mr. Chapman's Estate or take control over the property of the Estate.

    IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss are hereby DENIED at this time; and

    IT IS FURTHER ORDERED that the parties conduct their Initial Attorneys' Conference forthwith and submit their Certificate of Initial Attorneys' Conference to the Court. The Court will thereafter schedule a Pre-Trial Conference.

Signed: January 21, 2016

Graham C. Mullen
United States District Judge